IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CAMILLE CARRILLO DE LEÓN et al.,**

**Plaintiffs,**

**v.**

**VORNADO MONTEHIEDRA ACQUISITION L.P. et al.,**

**Defendants.**

**CIVIL NO. 15-1122 (GAG)**

**OPINION AND ORDER**

Camille Carrillo De León ("Carrillo") and David Mangual Negrón ("Mangual"), on behalf of their minor daughter, G.V.M.C., sued Vornado Montehiedra Acquisition, L.P. ("Vornado"), Vornado Realty Trust ("VRT"), St. James Security Services, Inc. ("St. James"), Jane Doe, ABC Insurance Company and Richard Roe Insurance Company (collectively "Defendants") for violating Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181-12189 et seq. (2015) ("the ADA") and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. Tit. 31, § 5141 ("Article 1802") by removing G.V.M.C. from the Montehiedra Town Center ("Montehiedra") because of her service dog. (Docket No. 12 at 4-7.)  Plaintiffs seek permanent injunctive relief and compensatory and punitive damages.[1]  Id. at 8-9.  Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Docket No. 47.)  After reviewing the parties' submissions and pertinent law, the Court **DENIES** Defendants' motion.  (Docket Nos. 50; 53.)

---

[1] In their opposition to the motion to dismiss, Plaintiffs conceded that the ADA provides only injunctive relief, but maintained that compensatory damages and punitive damages are available under their state law claim. (Docket No. 50 at 10.)

**Civil No. 15-1122 (GAG)**

**I.      Standard of Review**

As courts of limited jurisdiction, federal courts must construe their jurisdictional grants narrowly. Destek Grp. v. State of N.H. Pub. Utils. Comm'n., 318 F.3d 32, 38 (1st Cir. 2003). Consequently, the party asserting jurisdiction carries the burden of showing the existence of federal jurisdiction. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 132 (D.P.R. 2007). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6). Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Torres, 523 F. Supp. 2d at 132.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the Court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the Court must then "take the complaint's well-[pleaded]  (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."

**Civil No. 15-1122 (GAG)**

Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the Court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

**II.     Factual and Procedural Background**

Plaintiffs are residents of Guayama, Puerto Rico. (Docket No. 12 ¶¶ 5-6.) G.V.M.C. suffers from epilepsy, cognitive and motor retardation, cerebral palsy, congenital hydrocephalus, microcephaly, and scoliosis. Id. ¶ 14. She relies on a feeding tube and her service dog, Lincoln, who can detect impending epilepsy attacks and get help. Id. Lincoln is registered in the United States Dog Registry as a service animal and wears an identifying vest. Id. ¶¶ 14-15.

On October 1, 2014, Carrillo, G.V.M.C. and Lincoln went to Montehiedra, a shopping center located in San Juan, Puerto Rico that is owned and operated by Vornado and VRT. (Docket No. 12 ¶¶ 13, 17.) Montehiedra employed St. James for its security service. Id. ¶ 11. When Carrillo and G.V.M.C. entered Montehiedra, Rodríguez, a St. James security guard, stopped them and requested Lincoln's registration papers. Id. ¶ 18. Carrillo refused, telling Rodríguez that there is no need for registration papers as long as Lincoln is properly identified as a service animal by

3

**Civil No. 15-1122 (GAG)**

his tags. Id.  Rodríguez ordered Plaintiffs to leave, stating that no animals are allowed inside Montehiedra. Id.  After Carrillo refused to leave and called the police to file a complaint, Rodriguez escorted Plaintiffs off the premises. Id. ¶¶ 19-21.

Carrillo states in her affidavit that she and G.V.M.C. frequented Montehiedra prior to October 1, 2014 and wanted to return in the future. (Docket No. 50-1 ¶ 5.)  Plaintiffs contend that they were publically humiliated by the forcible removal, causing G.V.M.C. to suffer depression, anxiety, fear of leaving the house, and fear of being refused entry by Montehiedra and other places. (Docket No. 12 ¶¶ 30, 33-34.)  As G.V.M.C.'s parents, Mangual and Carrillo contend that they also suffered mental pain and anguish as a result of Defendants' discriminatory conduct. Id. ¶¶ 37-38.

**III.    Legal Analysis**

Defendants seek dismissal of Plaintiffs' complaint pursuant to Rule 12(b)(1), claiming that Plaintiffs lack standing to bring the ADA claim, and pursuant to Rule 12(b)(6), claiming that they failed to plead facts to support a claim entitling them to relief. (Docket No. 47 at 2.)

A. Standing

As a threshold matter, the Court must determine whether Plaintiffs have standing to bring their ADA claim.  The party asserting federal jurisdiction has the burden of demonstrating standing. Viqueira, 140 F.3d at 16.  Plainitffs must establish three elements for constitutional standing: actual or threatened injury, causal connection between the injury and the challenged conduct, and that a favorable Court decision can redress the injury. McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003).

To establish an injury, Plaintiffs must demonstrate that they are "currently deterred from patronizing" Montehiedra. Disabled Ams. for Equal Access, Inc. v. Ferries del Caribe, Inc., 405

4

**Civil No. 15-1122 (GAG)**

F.3d 60, 64 (1st Cir. 2005) (quoting Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002)).  Plaintiffs must also show that it is sufficiently likely that they "would again be wronged in a similar way."  Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992) (citing Los Angeles  v. Lyons, 461 U.S. 95, 111 (1983)); see also Dudley v. Hannaford Bros. Co., 333 F.3d 299, 304 (1st Cir. 2003) (requiring ongoing harm or colorable threat of future harm).  Although the ADA "is not intended to provide redress for past discrimination that is unlikely to recur," Plaintiffs need not make repeated attempts to enter Montehiedra in order to show imminent harm in the future for the purpose of standing.  Dudley, 333 F.3d at 306 (citing Pickern, 293 F.3d at 1136-37).

In this case, Plaintiffs allege sufficient facts to confer standing because they are currently deterred from returning to Montehiedra and are sufficiently likely to face the same denial of access in the future.  In her affidavit, Carillo states that she and G.V.M.C. frenquently went to Montehiedra before October 1, 2014 and want to return in the future because it is conveniently located. (Docket No. 50-1 ¶ 5.)  Because they were forcibly ejected from the premises, Carillo and G.V.M.C. are now justifiably afraid to return.  Id. ¶ 6.  The Court notes that Defendants do not claim that Plaintiffs would be treated differently in the future, or that Montehiedra has addressed the risk of future noncompliance with the ADA.  The apparent lack of policy or guidelines regarding service animals gives St. James' security guards unlimited discretion to admit or deny disabled persons accompanied by service animals, though there is no policy prohibiting service animals altogether inside Montehiedra. (Docket No. 47 at 9.)  Thus, G.V.M.C. will always risk denial of entry at Montehiedra.  See Ferries Del Caribe, 405 F.3d at 64 (finding standing to sue when the plaintiff alleged that he was denied access to the defendant's cruise ship by the physical barriers in place and intended to return); see also Norkunas v. HPT Cambridge, LLC, 969 F. Supp.

5

**Civil No. 15-1122 (GAG)**

2d 184, 193-94 (D. Mass. 2013).  Plaintiffs are currently deterred from patronizing Montehiedra, and are sufficiently likely to be refused entry again in the future.  Thus, the Court finds that Plaintiffs have demonstrated standing to bring their ADA claim.

        B.  <u>Sufficiency of Plaintiffs' Claim</u>

Congress enacted the ADA in order to prohibit discrimination against people with disabilities and "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals."  <u>Dudley</u>, 333 F.3d at 303 (citing 42 U.S.C. § 12101(a)(8)).  Title III of the ADA prevents privately operated public accommodations from denying disabled individuals "full and equal enjoyment of the goods, services, facilities, privileges, advantages" these places offer.  <u>Id.</u> at 303-04.

To state a claim under Title III of the ADA, Plaintiffs must show that G.V.M.C. is disabled under the statute, Defendants' establishment is a "public accommodation," Defendants have a "discriminatory policy or practice in effect," a reasonable modification of the policy or practice would afford them access to Defendants' services and facilities, and the Defendants refused to modify.  42 U.S.C. § 12182(b)(2)(A); <u>Dudley</u>, 333 F.3d at 307 (citing <u>PGA Tour, Inc. v. Martin</u>, 532 U.S. 661, 683 n. 38 (2001)); see also <u>Bello-Martinez v. Caribbean School Inc.</u>, No. 14-1609, 2014 WL 3895224, at *1 (D.P.R. Aug. 8, 2014).

Defendants do not dispute that G.V.M.C.'s physical impairments render her disabled under the ADA. Nor do they dispute that Montehiedra, a shopping center, is a public accommodation under the statute.  Therefore, the Court must assess whether Plaintiffs sufficiently alleged facts demonstrating that Montehiedra has a discriminatory policy or practice, and that a reasonable and necessary modification would afford G.V.M.C. access to Montehiedra's services and facilities.

**Civil No. 15-1122 (GAG)**

Plaintiffs have satisfied their burden to allege facts that support a reasonable inference that Montehiedra has a discriminatory policy or practice. Montehiedra does not prohibit service animals within its premises if its employees can ascertain them by making inquiries. (Docket Nos. 12 ¶ 18; 47 at 9.) However, Montehiedra's lack of an uniform guideline instructing security guards on the proper inquiries gives them total discretion to admit or prohibit disabled individuals from the premises. Defendants do not claim that the October 1, 2014 incident was an outlier or that Plaintiffs would be treated differently if the circumstances on that day were replicated. Thus, Plaintiffs cannot rely on their right to enter Montehiedra in light of G.V.M.C.'s disability.

The Court notes a helpful enforcement regulation issued by the Department of Justice, which provides: "[a] public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal." 28 C.F.R. § 36.302(c)(6) (2003). The Court defers to the Justice Department's interpretation of Title III of the ADA because it is the agency directed by Congress to implement and enforce the statute. Bragdon v. Abbott, 524 U.S. 624, 646 (1998) (citing Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837, 844 (1984)). In this case, Defendants exceeded the permissible scope of inquiry regarding Lincoln's status as a service dog by demanding his registration papers though he was properly identified with appropriate vest and tags. (Docket No. 12 ¶¶ 15, 18.) Therefore, Plaintiffs have sufficiently alleged that Defendants have a policy or practice of permitting such excessive inquiry, which constitutes discrimination on the basis of disability.

The Court analyzes factual allegations supporting the remaining two elements of Plaintiffs' ADA claim together. Plaintiffs have reasonably requested that Montehiedra allow Lincoln to enter the premises if adequately identified by his tags and vest, and that they not be denied entry when accompanied by him. (Docket No. 12 ¶¶ 15, 18.) This request, if granted, would allow Plaintiffs

7

access to Montehiedra's goods, services and facilities.  Because Lincoln must accompany G.V.M.C. at all times, Plaintiffs cannot return to Montehiedra without him.  Id. ¶ 16.  Thus, Plaintiffs have pled sufficient facts to state a claim for relief under Title III of the ADA. Defendants' motion to dismiss the federal claim is **DENIED**.

### C. Plaintiffs' State Law Claim

Because Plaintiffs' federal ADA claim survives the motion to dismiss, the Court may, in its discretion, exercise supplemental jurisdiction over their related state law claim.  When a state law claim and a federal claim "derive from a common nucleus of operative fact" and the plaintiff "would ordinarily be expected to try them both in one judicial proceeding,"  the distinct court may exercise supplemental jurisdiction over the state law claim.  Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

Pursuant to Article 1802, "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done . . . ."  Tit. 31, § 5141. Plaintiffs must show negligent acts, damages, and a causal link between the negligent acts and damages.  Gierbolini-Rosa v. Banco Popular De P.R., 121 F.3d 695 (1st Cir. 1997).  In this case, Plaintiffs' state and federal claims both arise from the October 1, 2014 incident, thus the operative facts are identical.  Cf. Szendrey-Ramos v. First Bancorp, 512 F. Supp. 2d 81, 86 (D.P.R. 2007) (declining to exercise supplemental jurisdiction when the Puerto Rico law claims are distinct, each has its own elements of proof not necessary to establish the federal claim, and outnumbered federal claims).  Therefore, in the interest of judicial economy and fairness, the Court will exercise supplemental jurisdiction over Plaintiffs' state law claim.  Defendants' motion to dismiss Plaintiffs' Article 1802 claim is **DENIED**.

**Civil No. 15-1122 (GAG)**

**Conclusion**

For the reasons stated above, Defendants' motion to dismiss at Docket No. 47 is hereby **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 29th day of February, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge